**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KAY WILLIAMS,<br>     Plaintiff,<br>                v.<br>THE KROGER CO.,<br>     Defendant. | Civil Action No.<br>1:21-cv-03878-SDG |

**OPINION & ORDER**

This matter is before the Court on Defendant The Kroger Co.'s motion for summary judgment [ECF 36] on Plaintiff Kay Williams's complaint. For the reasons stated below, Kroger's motion is **GRANTED**.

**I.   Introduction**

  **A.   Williams's Procedural Errors**

As an initial matter, Williams's counsel failed to comply with the Local Rules of the Court, this Court's Standing Order, and the Federal Rules of Civil Procedure on several points. Those failures are not dispositive, but they shape the Court's recitation of the facts and disposition of the case.

  **1.   Williams Did Not Properly Allege Additional Facts.**

First, Williams did not file a statement of additional material facts. LR 56.1(B)(2)(b), NDGa ("A respondent to a summary judgment motion shall include . . . with the responsive brief . . . [a] statement of additional facts which the

respondent contends are material and present a genuine issue for trial."). She instead attempted to supply additional facts in her opposition brief. Second, that brief fails to conform to the Court's Standing Order as it pertains to supporting record citations.[1]

The Court accepts as admitted all of the facts set forth in Kroger's Statement of Undisputed Material Facts that Williams did not "specifically controvert[ ] with a citation" to record evidence, *Pledger v. Reliance Tr. Co.*, 2019 WL 10886802, at *1 n.2 (N.D. Ga. Mar. 28, 2019), and thus treats only Paragraphs 3, 5, 12, 13, and 14 as disputed or disputed in part.[2] Accordingly, the portions of Kroger's Statement of Undisputed Material Facts that the Court cites are deemed undisputed unless otherwise noted. Further, the Court disregards any of Williams's facts that are stated only in her opposition brief. *See Richardson v. Jackson*, 545 F. Supp. 2d 1318, 1326 (N.D. Ga. 2008) ("[T]o the extent that either party includes any fact in a brief that is *not* included in the party's Statement of Material Facts (or in its response to

---

[1] ECF 6, at 23 ("Record citations should be made only in the statement of undisputed (or disputed) material facts or responses thereto . . . . Summary judgment briefs should cite only to the relevant numbered paragraph(s) of the SMFs, not the underlying record.").

[2] Williams's attempt to dispute Paragraph 9 does not comply with LR 56.1(B)(2)(a)(2). ECF 37-1, ¶ 9.

the opposing party's Statement of Material Facts), the Court is not permitted to consider such fact in resolving any pending motion for summary judgment.").

### 2.    Williams Did Not Properly Disclose Expert Witnesses.

Kroger contends that Williams should not be able to rely on any expert testimony—including and especially testimony from Dr. V.K. Puppala, one of Williams's treating physicians—relating to causation because her experts were not properly disclosed during discovery. When Kroger asked Williams what experts would testify at trial, Williams merely offered the names of "four treating physicians."[3] Such a disclosure is insufficient under Federal Rules of Civil Procedure 26 and 37.

Rule 26 mandates that parties disclose all potential expert witnesses before trial. Fed. R. Civ. P. 26(a)(2). The mere provision of a potential expert's name does not suffice: Rule 26 requires that an expert witness must provide a written report "if the witness is one retained or specially employed to provide expert testimony in the case. . . . " *Id.* 26(a)(2)(B). Even in the case of expert witnesses who are not required to provide a written report, a party's expert witness disclosures must still include "(i) the subject matter on which the witness is expected to present evidence

---

[3]    ECF 36-2, at 10.

. . . and (ii) a summary of the facts and opinions to which the witness is expected to testify." *Id.* 26(a)(2)(C). Williams's disclosure of Dr. Puppala and the other treating physicians satisfied neither Rule 26(a)(2)(B) nor Rule 26(a)(2)(C). The consequences of such improper disclosures are clear in this Circuit: "If a party fails to meet Rule 26's disclosure requirements, Federal Rule of Civil Procedure 37(c)(1) prohibits that party from using that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Pinero v. 4800 W. Flagler L.L.C.*, 430 F. App'x 866, 869 (11th Cir. 2011) (cleaned up).

     The failure to properly disclose Dr. Puppala and the other purported experts was neither substantially justified nor harmless. Williams made no attempt to argue otherwise and offers no explanation for why her only attempt at disclosure was a list of names without any other information required under Rule 26. Notwithstanding that Dr. Puppala appeared to disavow his opinion regarding the cause of Williams's injuries as discussed in greater detail below, without an understanding of Dr. Puppala's expected testimony, Kroger's ability to effectively depose or challenge Dr. Puppala was inhibited. The same holds true for each of Williams's supposed expert witnesses. The consequence for Williams's deficient expert disclosures is the preclusion of any expert testimony she now proffers.

B.     **Factual and Procedural History**[4]

This case presents a classic slip-and-fall. On December 11, 2019, Williams was shopping at a grocery store owned by Kroger.[5] At 12:54:50 pm, a bag of ice carried by an employee broke and spilled onto the floor.[6] At 12:55:55 pm, Williams slipped in the immediate vicinity of the spilled ice and fell.[7] As a result of the fall, Williams allegedly suffered from headaches and sustained injuries to her left knee and her lower back.[8]

According to Kroger's medical expert, shortly after the incident Williams sought medical care at Eastside Medical Center, where she reported chronic headaches and left knee pain.[9] At that time, she was given Tylenol and diagnosed

---

[4]  The Court acknowledges that much of the evidence regarding Williams's alleged injuries emanates from the report of Kroger's medical expert, Maurice L. Goins, M.D., and various of Williams's medical records. Hearsay cannot be considered in ruling on a motion for summary judgment unless it can be reduced to admissible evidence at trial. *Macuba v. DeBoer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999). The Court finds that the portions of Dr. Goins's report and other exhibits that the Court cites herein are reducible to admissible form at trial and therefore are properly considered now.

[5]  ECF 36-1, ¶ 1.

[6]  *Id.* ¶ 2.

[7]  *Id.* ¶ 4.

[8]  *Id.* ¶ 8.

[9]  ECF 36-2, at 52 (Report of Dr. Goins).

with a knee sprain.[10] The only record evidence regarding these alleged injuries suggests that the x-ray of Williams's knee was unremarkable and her pain was mild.[11] There is no evidence indicating that Williams complained of pain in her neck or lower back as a result of the slip-and-fall during this visit to Eastside Medical Center.

Both before and after the slip-and-fall, however, Williams sustained injuries from motor vehicle collisions.[12] On June 9, 2018, Williams was involved in a car accident.[13] Also, on October 1, 2019, Williams's vehicle was rear-ended.[14] On October 3, she sought treatment at Eastside Urgent Care for dizziness, a headache,

---

10   *Id.*

11   *Id.*

12   ECF 36-1, ¶ 9.

13   *Id.*

14   *Id.* In her Statement of Disputed Material Facts, Williams disputes that she was in a car accident on October 1, 2019, stating, "There is no evidence of an accident on 10/1/19." ECF 37-1, ¶ 9. However, this does not accord with any of the three ways in which a respondent may challenge a movant's facts under LR 56.1(B)(2)(a)(2): Williams neither refuted Kroger's ¶9 with a response "supported by specific citations to evidence," nor submitted a valid objection to the admissibility of the fact, nor pointed out that Kroger's citation does not support the fact or that the fact is not material. Moreover, as cited by Kroger, Williams's own medical records reflect that she was injured in a car accident on that day. ECF 36-2, at 34. Thus, the fact of the October 1, 2019 car accident is undisputed as a matter of law.

and neck and lower back pain.[15] Beginning on October 10, Williams sought treatment at AICA Orthopedics.[16] According to Kroger's medical expert's report, which is the only record evidence on this point, Williams's orthopedic treatment stemming from the October 1 collision continued until January 2020—weeks after the slip-and-fall at issue here.[17]

On February 1, 2020—after the slip-and-fall as well as after the October 2019 car accident, but before the complaint in this case was filed—Williams was involved in another motor vehicle collision.[18] On April 27, 2020, she sought treatment from Canning Chiropractic and reported lower back pain due to the February 2020 motor vehicle accident.[19] Canning Chiropractic recorded other areas of concern, including Williams's left knee and shoulder, C/T junction, and tension headaches.[20]

---

[15]   ECF 36-1, ¶ 9.

[16]   ECF 36-2, at 35.

[17]   ECF 36-1, ¶ 9; ECF 36-2, at 36.

[18]   *Id.*

[19]   *Id.* at 37.

[20]   *Id.*

On April 21, 2020, after the slip-and-fall and all three motor vehicle collisions, Dr. Puppala evaluated Williams at Comprehensive Spine and Pain.[21] Eventually, on October 16, 2020, Dr. Puppala recommended Disc-FX surgery.[22] Though the cause of the injuries prompting that recommendation is disputed, Dr. Puppala performed the surgery on Williams on October 19.[23] Dr. Puppala was not aware of Williams's history of car accidents until he was deposed during the pendency of this lawsuit, long after he had recommended and performed the Disc-FX surgery on Williams.[24]

On August 18, 2021, Williams filed the instant lawsuit in the State Court of Gwinnett County, Georgia, alleging one count of premises liability, one count of vicarious liability, and one count of negligent training and supervision against Kroger.[25] On September 20, Kroger removed the case to this Court.[26] On August 1,

---

[21] *Id.* at 18 (Puppala Dep. Tr. 40:22–23).

[22] *Id.* at 19 (Puppala Dep. Tr. 22:6–10).

[23] ECF 36-1, ¶ 10.

[24] *Id.* ¶ 11.

[25] *See generally* ECF 1-1.

[26] *See generally* ECF 1.

2022, Kroger filed the instant motion for summary judgment.[27] The motion is now ripe for consideration.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If a movant meets its burden, the non-movant must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. The non-movant "may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Sears v. Roberts*, 922 F.3d 1199,

---

[27] ECF 36.

1207 (11th Cir. 2019). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the non-movant, "and all justifiable inferences are to be drawn" in her favor. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). The Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Sears*, 922 F.3d at 1205 (citing *Anderson*, 477 U.S. at 249).

### III. Discussion

#### A. The Georgia Slip-and-Fall Negligence Standard

Williams brings a negligence claim based on premises liability. To sustain such an action based on a landowner's negligence under Georgia law, a plaintiff must prove the standard elements of a negligence claim—duty, breach, causation, and damages—as well as the added element of superior knowledge (*i.e.*, the defendant had actual or constructive knowledge of the hazard that caused the slip-and-fall, and the plaintiff lacked such knowledge "despite the exercise of ordinary care due to conditions within the [defendant's] control"). *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (1997).

However, "an owner or occupier of land is not an insurer of the safety of its invitees," and the "mere occurrence of an injury does not create a presumption of negligence." *Lee v. Food Lion*, 243 Ga. App. 819, 820 (2000). *See also Robinson*, 268 Ga. at 740 ("The owner/occupier is not required to warrant the safety of all persons from all things."); *All Am. Quality Foods, Inc. v. Smith*, 340 Ga. App. 393, 395 (2017) ("It is axiomatic that proof of a fall, without more, does not give rise to liability on the part of a proprietor."). In other words, "a plaintiff must show that [she] was injured by a hazard that the owner should have removed in the exercise of ordinary care for the safety of the invited public." *Ahuja v. Cumberland Mall, LLC,* 821 F. Supp. 2d 1317, 1324 (N.D. Ga. 2010) (cleaned up). Even an owner's or occupier's superior knowledge vis-à-vis the injured plaintiff is not necessarily enough to prevail "absent some reason to be on notice of the likelihood of a given hazard arising." *Pickering Corp. v. Goodwin*, 243 Ga. App. 831, 832 (2000) (citations omitted).

### B. Superior Knowledge and Reasonable Time to Remedy the Hazard

Kroger first argues that it and Williams effectively had equal knowledge of the ice spill because Williams saw the ice "seconds prior to her fall."[28] Williams

---

[28] ECF 36-2, at 5; *see also* ECF 36-1, ¶ 3.

disputes this fact and avers that she merely looked in the direction of the spill but did not see it.[29] It is undisputed, however, that Kroger had actual knowledge of the ice spill and that Kroger possessed such knowledge before Williams. Williams argues that this amounts to Kroger's superior knowledge of the ice spill, or at least creates a dispute of material fact as to the superior knowledge element of her premises liability claim such that summary judgment for Kroger is precluded.[30]

If summary judgment came down to whether Williams indeed saw the ice before she fell, then that issue would be properly put to a jury. However, even where it appears that the defendant had superior knowledge, Georgia law recognizes that "absent some reason to be on notice of the likelihood of a given hazard arising, a proprietor is generally permitted a reasonable time after notice of a hazardous condition to exercise care in correcting such condition." *Pickering Corp. v. Goodwin*, 243 Ga. App. 831, 833 (2000) (citations omitted).

In *Pickering*, a shopping mall patron was injured when she slipped and fell on spilled liquid. *Id.* It was undisputed that the spill occurred less than 90 seconds before the patron's fall, so the mall learned of the spill "almost immediately" after

---

[29]   ECF 37-1, ¶ 3.
[30]   ECF 37, at 7–9.

it occurred. *Id*. The Court of Appeals of Georgia determined that there was "no evidence which creates a jury question as to [the mall's] knowledge of the potential for the subject hazard or its conduct after receiving notice of the hazard." *Id*. The fact that the mall knew about the spill first did not render the mall liable; rather, because of the short time between the spill and the slip-and-fall, the patron could not establish that the mall had "failed to exercise ordinary care in meeting its duty," despite its prior knowledge. *Id.* (reversing the trial court for denying the mall's summary judgment motion under these facts).

Williams attempts to distinguish her claim from *Pickering*, by (1) noting that a Kroger employee created the ice spill, unlike the spill in *Pickering*, and (2) arguing that a second Kroger employee in the vicinity should have guarded the spill or warned nearby shoppers.[31] These minor distinctions fail to carry Williams's case forward.

First, that a Kroger employee instead of, *e.g.*, another shopper, spilled the ice is immaterial. While the spill in *Pickering* was not caused by the mall or any of its employees, the mall's knowledge of the hazard was nearly immediate and, in any case, the mall knew of the spill before the patron did. As in *Pickering*, "the

---

31   ECF 37-1, at 9.

occurrence of the unfortunate event" was not "sufficient to authorize an inference of negligence" on Kroger's part, absent Kroger's subsequent failure to exercise ordinary care in protecting Williams from the spill. *Id.*

Second, even crediting Williams's claims regarding a second Kroger employee's alleged knowledge of the spill and ability to guard the area or alert passers-by, Georgia appellate panels have consistently rejected such arguments as a matter of law. *See, e.g.*, *Bi-Lo, LLC v. Green*, 346 Ga. App. 770, 772 (2018) (reversing trial court's denial of Bi-Lo's motion for directed verdict and reasoning that, "given the incredibly short window of time between Bi-Lo's notice of the spilled tea and [the] fall [(approximately 75 seconds),] . . . Bi-Lo did not have a reasonable amount of time after notice of the hazardous condition to exercise care in correcting such condition prior to [the] fall," despite arguments that Bi-Lo's manager should have guarded the area of the spill after he learned of it) (citing *Pickering Corp.*, 243 Ga. App. at 832–33); *Youngblood v. All American Quality Foods, Inc.*, 338 Ga. App. 817, 821 (2016) (affirming summary judgment for the grocery store and reasoning that, even if the store could have done more to prevent the slip-and-fall after learning about it, and despite evidence that the store trained its employees to respond to spills by having one employee stand over the spill while the other retrieves cleaning implements, "this does not change the fact that, under the circumstances,

[the store] responded within a reasonable time and exercised ordinary care after receiving notice of the spill.") (citing *Pickering Corp.*, 243 Ga. App. at 832).

The same reasoning applies here. Williams slipped approximately sixty-four seconds after the spill.[32] Although Kroger knew about the hazard immediately, under Georgia law, it did not have a reasonable amount of time to remedy the hazard before Williams fell. On this basis alone, Kroger's summary judgment motion is due to be granted.

### C.   Plaintiff's Causation Evidence

Independent of the above basis for summary judgment, Kroger is entitled to partial summary judgment because Williams offers no competent evidence on causation regarding her headaches and back pain and, therefore, cannot establish Kroger's negligence for those injuries.

Under Georgia law, the general rule in simple negligence cases is that plaintiffs "need not produce expert evidence on causation" if the question of causation is "perfectly capable of resolution by ordinary people using their common knowledge and experience, without the need for expert testimony." *Cowart v. Widener*, 287 Ga. 622, 626, 628 (2010) (noting, for example, that

---

[32]   ECF 36-1, ¶ 2 and ¶4.

determining "whether an automobile collision caused a backache later the same day" would not require expert causation testimony). *See Hutcheson v. Daniels*, 224 Ga. App. 560, 561 (1997) ("[A] lay jury could conclude from common knowledge that a causal connection existed in light of the short lapse between [the plaintiff's] accident and his onset of symptoms and receipt of medical treatment."). However, there is an important exception to this rule: "[E]ven in simple negligence cases, plaintiffs must come forward with expert evidence to survive a defense motion for summary judgment, where 'medical questions' relating to causation are involved." *Id.* at 627.

Expert evidence is only necessary "where the issue of causation presents 'specialized medical questions,' *i.e.*, 'where the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience' and presents medical questions that 'can be answered accurately only by witnesses with specialized expert knowledge.'" *Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 967–68 (11th Cir. 2013) (citing *Cowart*, 287 Ga. at 628). "[T]hus, if there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment." *Bruce v. Classic Carrier, Inc.*, 2014 WL 1230231, at *1 (N.D. Ga. Mar. 24, 2014).

As discussed above, Williams alleges she suffered from headaches and sustained injuries to her left knee and her lower back due to the slip-and-fall. But Williams was also involved in motor vehicle accidents—both before and after the Kroger incident—that caused her to complain of headaches and lower back pain.[33] Because Williams has not alleged or provided evidence that these pre-existing conditions had subsided prior to her fall at Kroger, determining causation in this case requires expert testimony. Williams provided none, so she cannot establish causation and Kroger is entitled to summary judgment.[34]

Further, despite failing to make the requisite expert witness disclosures under the Federal Rules of Civil Procedure, Williams contends that she has supplied expert medical testimony as to causation based on Dr. Puppala's

---

[33] ECF 36-1, ¶ 9.

[34] The Court acknowledges that Williams's alleged knee pain was mentioned for the first time after the slip-and-fall. Thus, had Williams marshalled evidence that Kroger possessed superior knowledge and unreasonably delayed clearing the spill, Williams might have been able to proceed to trial on the alleged injury to her knee, which would not necessarily have required expert testimony on causation. *See*, *e.g.*, *Calhoun v. Wal-Mart Stores East, LP*, 2017 WL 9362708, at *6 (N.D. Ga. Jul. 24, 2017) (where the court granted partial summary judgment because the plaintiff's alleged injuries to her wrist, neck, and brain required expert testimony on causation which she did not produce, while her leg injury was the type "that a jury could reasonably determine was caused by the incident in question based on their common knowledge and experience. . . .").

deposition and two undated medical records from his office.[35] Those records state that Williams's lower back injury began on December 11, 2019, due to a slip-and-fall.[36] They also state that, "to a reasonable degree of medical certainty, it is probable that the patient's fall is the direct proximate cause of the documented injuries. . . ."[37]

These documents are not substitutes for Dr. Puppala's expert testimony. Worse still, during his deposition, it became clear that Dr. Puppala had no knowledge of Williams's motor vehicle accidents before the slip-and-fall.[38] When confronted by Kroger's counsel with evidence of these accidents, Dr. Puppala disavowed his opinion as to the cause of Williams's alleged injures and explained that, without reviewing all of her medical records from the car accidents before and after the slip-and-fall, he would "have to reserve any opinions" on whether Williams's injuries were caused by the Kroger slip-and-fall.[39] Accordingly, even if this evidence were tantamount to expert testimony, Dr. Puppala's opinion was inconclusive.

---

[35] ECF 37, at 14–15.

[36] ECF 37-4.

[37] ECF 37-5.

[38] EFC 36-2, at 18 (Puppala Dep. Tr. 40:8–16).

[39] *Id.* at 17 (Puppala Dep. Tr. 46:15–25).

Because expert testimony as to causation is required for Williams's back injury and headaches, and Williams has none, Kroger is entitled to partial summary judgment on Williams's premises liability claim.

D.   **The Claims for Vicarious Liability and Negligent Training and Supervision**

Having granted Kroger's motion for summary judgment as to Count I of Williams's complaint, the Court notes that Counts II and III for vicarious liability and negligent training and supervision, respectively, remain. While neither party addresses those causes of action, the Court acknowledges that they are merely derivative of the principal negligence claim. *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1329–30 (N.D. Ga. 2009) (citation omitted) (recognizing vicarious liability and negligent hiring claims are derivative in nature). Accordingly, Kroger is entitled to summary judgment on these claims as well.

**IV.      Conclusion**

Kroger's motion for summary judgment [ECF 36] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Kroger and close the case.

**SO ORDERED** this 31st day of March, 2023.

_____
Steven D. Grimberg
United States District Court Judge